UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANTHONY GUANCI, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>JACK KESSLER, an individual, EUGENE KESSLER, an individual, STUART KESSLER, an individual, RAY PARELLO, an individual, and SALEM VEGAS INVESTMENTS, LLC, a Florida limited liability company,<br><br>Defendants. | Case No. 2:14-cv-01299-APG-GWF<br><br>**Order Denying Motion to Dismiss**<br><br>(Dkt. #23) |

In 2005, plaintiff Anthony Guanci and the defendants created a partnership to invest in the Palms Place Hotel and Spa condominium project. Initially, the project looked like it would be a success. Before ground was broken in 2006, every condominium was pre-sold. But by the time construction finished in 2008, like many real estate endeavors at the time, Palms Place was in financial trouble. Hundreds of people who had pre-purchased units backed out. And Guanci and the defendants realized they were unlikely to see any return on their investment in the near future.

The project's lackluster performance caused a rift among the partners. The defendants believed the partnership should sue Palms Place to force a liquidation. Guanci—who had arranged the deal with Palms Place—disagreed. He believed that pressuring Palms Place would reduce the chances of seeing a return. Finally, in 2012, the defendants were tired of waiting. They ousted Guanci and dissolved his 49% interest in the partnership. The defendants operated the partnership without him.

Guanci filed this lawsuit asserting a variety of claims against the defendants. The defendants have moved to dismiss the complaint, arguing that Guanci has not sufficiently alleged he suffered any damages. Defendants contend that the partnerships' security interest in the

Palm's Place project is subordinated behind another massive security interest, and therefore Guanci cannot show that his shares in the partnership will ever have any real value. I disagree.

Defendants' argument is based on facts not alleged in the complaint—and thus not properly before me. And in any event, Guanci has sufficiently alleged the damages elements of his claims. None of the defendants' other arguments has merit. Defendants' motion is therefore denied.

## I. BACKGROUND[1]

Guanci is a real estate investor and an acquaintance of the Maloof family—principals in the Palm Casino Resort. In the booming Las Vegas real estate market of the mid-2000's, Guanci and the Maloofs developed a plan to create the Palms Place Hotel and Spa condominiums. George Maloof eventually invited Guanci to invest in the project.

Guanci needed capital, so he reached out to defendant Ray Parello, one of his contacts at a prominent investment firm. Parello was interested in the deal and wanted to bring in more investors with whom he had done business before: defendants Jack, Stuart, and Eugene Kessler. Guanci and the Kesslers then created Salem Vegas, LP (the "Partnership")[2] as a vehicle to invest in the Palms Place project.[3] The Kesslers contributed approximately $2,000,000 to the Partnership. This money was then invested in Palms Place.

Initially, the Kesslers (collectively) and Guanci each owned about half of the Partnership. Guanci received his half in exchange for bringing the opportunity and his real estate experience; the Kesslers received their half for their capital contributions.

The Palms Place project still needed another $500 million more to proceed. So in 2006 the developer negotiated a construction loan with Wells Fargo. Wells Fargo would issue the loan only if it was secured by the priority lien position, which was held by the Partnership's

---

[1] The following facts are derived from the amended complaint. I assume all of these allegations are true only to decide this motion to dismiss. (*See* Dkt. 19.)

[2] Guanci and Stuart Kessler were the co-managers of the entity designated as the general partner of the Partnership, Salem Realty. (*Id.*)

[3] It is unclear from the complaint why Parello was not added to the group.

2

$2,000,000 loan. Guanci agreed on behalf of the Partnership to subordinate the Partnership's loan behind Wells Fargo's construction loan.

By 2008 the Palms Place project—like so many real estate projects at that time—had largely tanked. In 2004 when construction began, every condominium had been pre-sold. In 2008 when the project opened, almost half of the buyers had dropped out because they were unable to obtain mortgages.

It became clear to the Kesslers they were not going to see any return on their investment in the near future. They demanded that the Palms Place liquidate the remaining condominiums so that they could get some sort of return for their investment. When that did not work, the Kesslers wanted to sue Palms Place and the Maloofs.

But to sue, the Kesslers needed Guanci because he possessed almost half of the Partnership. Guanci believed suing the Maloofs or the developer was a bad idea and would ruin any chance of ever seeing a return. The parties spent the next few years apparently disagreeing about the proper course for the Partnership.

The parties reached a breaking point in 2012. In April, the Kesslers sent Guanci a letter claiming he was in default for failing to make $650,000 in capital contributions to the Partnership. The Kesslers told Guanci that if he failed to make the contribution within five days, his interest in the Partnership would be "diluted accordingly."

A week later the Kesslers sent Guanci a second letter, this time telling him that he had been effectively removed from the partnership and all of his ownership had been dissolved. The Kesslers divided up Guanci's shares among themselves and added Parello to the Partnership.[4]

Guanci sued the defendants for ousting him, asserting claims for (1) breach of contract, (2) breach of fiduciary duty, (3) breach of the implied covenant of good faith, (4) conversion, (5) civil conspiracy, and (6) a declaration of Guanci's rights in the Partnership.

---

[4] The defendants here, the Kesslers and Parello, filed a separate lawsuit against Guanci. This lawsuit was recently dismissed with prejudice for failure to state a claim. *See Salem Vegas, L.P., et al v. Anthony Guanci*, 2:12-cv-01892-GMN-CWH.

## II.     LEGAL STANDARD: MOTION TO DISMISS

A complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[5] While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."[6] "Factual allegations must be enough to rise above the speculative level."[7] Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."[8]

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering a motion to dismiss. First, the court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth.[9] Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice.[10] Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief.[11] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for misconduct.[12] Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged–but not shown–that the pleader is entitled to relief."[13] When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed.[14]

---

[5] Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007).

[6] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[7] *Twombly*, 550 U.S. at 555.

[8] *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted).

[9] *Id*. at 1950.

[10] *Id*. at 1949.

[11] *Id*. at 1950.

[12] *Id*. at 1949.

[13] *Id*. (internal quotation omitted).

[14] *Twombly*, 550 U.S. at 570.

### III. DISCUSSION

Defendants move to dismiss each of Guanci's six claims: (1) breach of contract, (2) breach of fiduciary duty, (3) breach of the implied covenant of good faith, (4) conversion, (5) civil conspiracy, and (6) a declaration of Guanci's rights in the Partnership. The parties apparently agree that Delaware law applies to their claims, so I will apply it.[15]  I address each claim in turn.

### A. Breach of Contract

A claim for breach of contract requires the plaintiff to properly allege a contract existed, the contract was breached, and the plaintiff suffered damages.[16]  Defendants' primary argument on this claim is that Guanci has not sufficiently alleged any contractual damages. Defendants point out that, because of Guanci's agreement to subordinate the Partnership's interest behind Wells Fargo's massive construction loan, it is unlikely the Partnership will see an investment return or have any other value. Because the Partnership is valueless, defendants argue that Guanci did not suffer any loss when he was ousted. This argument forms the core of defendants' motion to dismiss—once this lack of damages is established, according to defendants, all of Guanci's other claims topple.

I disagree with defendants' damages argument for several reasons. First, defendants' theory rests on facts not alleged in the complaint. The complaint does not allege that the Partnership is unable to collect on its interest in Palms Place, nor does it allege the Partnership is otherwise valueless. Defendants argue that I should use the "incorporation by reference doctrine" to consider the terms and facts surrounding the subordination of the Partnership's loan because Guanci's complaint makes a passing reference to "the subordination agreement." But the incorporation by reference doctrine applies only where a complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim."[17]  Neither is true here. The

---

[15] (Dkt. #23 at 6.)

[16] *Meyer v. Meyer, Inc. v. Brooks*, 2009 WL 2778426 (Del. Com. Pl. May 19, 2009).

[17] *Goodwin v. Executive Tr. Servs.,* LLC, 680 F. Supp. 2d 1244, 1250 (D. Nev. 2010).

5

subordination agreement is mentioned only twice in Guanci's complaint. None of Guanci's claims arises from the subordination agreement. I therefore have no basis to consider whether the subordination agreement rendered the partnership valueless.

Second, even if I did consider the subordination agreement, the complaint properly alleges that Guanci suffered damages. Guanci alleges he owned numerous shares in the Partnership and that defendants misappropriated these shares in breach of the partnership agreement. The current and future value of these shares are subjects for summary judgment or trial. Guanci is not required to prove the precise value of his shares in his complaint.[18]

Defendants' theory, stated slightly differently, is that because another loan is in front of the Partnership's interest, any damages claim is untenable as a matter of law. Defendants cite no authority to support this position and it does not make sense. The Partnership will be paid, presumably, once Wells Fargo has received its payout. Defendants would like me to assume that Wells Fargo will never receive its payout so that the Partnership will perpetually be valueless—but again, this assumes facts not in the complaint nor otherwise properly before me.

In addition to the damages argument, defendants argue the breach of contract claim fails for other reasons. Defendants argue they cannot be liable as limited partners, but they cite no cases to support the proposition that limited partners cannot be liable for breaches of a partnership

---

[18] *See Enigma Info. Retrieval Sys., Inc. v. Radian, Inc.,* No. CIV.A.04C06069FSS, 2005 WL 445568, at *3 (Del. Super. Feb. 23, 2005) (rejecting argument that damages were too speculative at the motion to dismiss stage, noting that the court "must assume that Enigma will present experts to testify" about damages); *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005) (reversed on other grounds) (rejecting argument that damages alleged were too speculative, noting that "however difficult it might be to prove damages at trial, ultimately this is a question of fact subject to proof, and is inappropriate to support this motion to dismiss).

6

agreement. The Partnership agreement only limits the partners' liability for "debts or losses of the Company."[19] It says nothing about limiting liability for claims between partners.[20]

Defendants also argue that only the general partner had the authority to breach the Partnership agreement. Again, defendants cite no authority suggesting that limited partners are immune from claims that they breached their obligations to other partners. If the limited partners exceeded their powers under the Partnership agreement, that may be a breach in itself. Further, the alleged facts indicate the Kesslers became general partners after ousting Guanci, thereby potentially making them liable for breaches as general partners as well.[21]

Finally, defendants argue that Guanci's breach of contract claim fails because he has not sufficiently alleged he "substantially complied" with the Partnership agreement. Defendants argue that Guanci's "unlawful" agreement to subordinate the Partnership's interest under Wells Fargo's interest prevents Guanci from suing on the Partnership agreement. But again, defendants are arguing from facts not alleged in the complaint. There are no allegations in the complaint indicating that Guanci unlawfully subordinated the Partnership. The appropriate vehicle for defendants' arguments is a summary judgment motion or trial.[22] Therefore, Guanci may proceed with his breach of contract claim.

**B. Breach of Fiduciary Duty**

Defendants next argue Guanci has not properly supported his fiduciary duty claim. Guanci has alleged facts from which a jury could plausibly find that defendants took on fiduciary duties as either limited or general partners.[23] As explained above, the defendants ousted Guanci

---

[19] (Dkt. #19-1 at 15-16.)

[20] (*Id.*)

[21] Guanci alleges that the Kesslers added a new partner, sent letters on behalf of the partnership, and refused to pay Guanci money he alleges is owed. (Dkt. #19 at 12-18.)

[22] Although the rules give me discretion to treat a motion to dismiss as a motion for summary judgment, defendants have not provided admissible evidence in support of their arguments.

[23] Delaware courts make clear that limited partners may be liable for fiduciary breaches where they assume fiduciary duties by managing the entity. *See, e.g., Feeley v. NHAOCG,* 62 A. 3d 649, 662 (Del. Ch. 2012); *James-River Pennington v. CRSS Capital*, *Inc*., 1995 WL 106554 at

7

and continued to run the Partnership on their own.  Defendants raise three arguments for why the fiduciary claim nevertheless fails: (1) Guanci takes inconsistent positions in his claims, (2) this claim is redundant of the breach of contract claim, and (3) the economic loss doctrine applies. None of these arguments is availing.

Defendants first contend that Guanci takes inconsistent positions in his complaint because when alleging his breach of contract claim he disaffirms a certain amendment to the Partnership agreement while in his fiduciary claim he affirms this same amendment.  Plaintiffs may allege alternative, even contradictory, claims at the pleading stage.[24]  This inconsistency is not a reason to dismiss.

Defendants are also wrong that the fiduciary claim is redundant of the breach of contract claim.  A fiduciary duty claim may be barred when it is wholly redundant of a breach of contract claim.[25]  But this bar applies only where the two claims "overlap completely."[26]  If the fiduciary duty claim alleges additional facts and remedies, it should not be barred.[27]

Here, Guanci's breach of contract claim primarily arises from the defendants' alleged breach of the Partnership agreement in improperly allocating his shares.  Guanci's fiduciary claim is based on much more—including that defendants took over as *de facto* general partners, intentionally robbed Guanci of all of his shares in the company, and then mismanaged the

---

*11 (Del. Ch. Mar. 6, 1995); *RJ Associates, Inc. v. Health Payors' Organization Ltd. Partnership, HPA, Inc.,* 1999 WL 550350 (Del. Ch. 1999).  Here, Guanci specifically alleges that defendants ousted him, sent letters on behalf of the company, refused to make payouts of money owed, added a new partner, among other things.  At the pleading stage, this is sufficient to allege that the defendants may have assumed fiduciary duties under Delaware law.

[24] *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1159 (E.D. Cal. 2010) ("A party may state as many separate claims or defenses as it has, regardless of consistency.") (quoting Fed. R. Civ. Pro. 8(d)(3)).

[25] *Grunstein v. Silva,* 2009 WL 4698541 (Del. Ch. Dec. 8, 2009).

[26] *Schuss v. Penfield Partners, L.P.,* 2008 WL 2433842, at *10 (Del. Ch. June 13, 2008); *RJ Associates, Inc.,* 1999 WL 550350.

[27] *Schuss,* 2008 WL 2433842, at *10.

company resulting in it losing value.[28] The fiduciary duty and breach of contract claims are therefore sufficiently distinct, at this stage, to survive.[29]

The economic loss doctrine is inapplicable for the same reason. This doctrine forecloses a plaintiff from recovering purely economic damages arising out of a contractual relationship.[30] But it does not apply where a plaintiff has sufficiently alleged tortious breaches and damages independent of the contract. And as explained above, Guanci has. Guanci's fiduciary claim therefore survives.

### C. Breach of Good Faith

Defendants argue that the covenant of good faith claim is defective "for the identical reasons plaguing Guanci's claim for express contractual breaches . . . a total absence of legally-cognizable damages as a direct result of the Subordination Agreement."[31] As explained above, Guanci has sufficiently alleged damages. Guanci's complaint alleges that defendants wrongfully deprived him of his shares in the Partnership, in breach of express terms of the Partnership agreement and an implied covenant not to deprive him of the benefits of the contract.[32] The breach of good faith claim survives.

### D. Conversion

Defendants mount a brief argument against Guanci's conversion claim. They primarily repeat their damages argument, pointing out there can be no conversion of property that has no

---

[28] (Dkt. #19 at 12-18.)

[29] Defendants also raise their damages argument again: arguing that Guanci cannot show that defendants' mismanagement would have caused damage in light of the subordination agreement. For the reasons explained above, the effect of the subordination agreement is not properly before me in this motion to dismiss.

[30] *Phillip A. Templeton, M.D., P.A. v. EmCare, Inc.,* 869 F. Supp. 2d 333, 340-41 (D. Del. 2012).

[31] (Dkt. #23 at 13.)

[32] Defendants also seem to argue that the implied covenant claim is redundant of the breach of contract claim because only express provisions of the contract govern here. But Guanci's allegations also implicate whether defendants used those express provisions in bad faith so as to deprive Guanci of his ownership interest. Although ultimately Guanci's implied covenant and breach of contract claims may be inconsistent, at the pleading stage, each survives.

value. As discussed above, at this stage Guanci has sufficiently alleged that he suffered damages. Defendants also suggest that the conversion claim is inconsistent and redundant of the breach of contract claim. But as explained above, inconsistent claims are permissible at the pleading stage. And Guanci has sufficiently alleged that defendants misappropriated his ownership interests in violation of a fiduciary or other tortious duty. Thus the conversion claim is not redundant of the breach of contract claim.[33]

### E. Civil Conspiracy

To prove civil conspiracy, a plaintiff must show that the defendant acted unlawfully in furtherance of an agreement between two or more persons.[34] Delaware law requires that a claim for civil conspiracy be based on an independent, underlying wrong—not merely a breach of contract.[35] Defendants' sole argument here is that Guanci's civil conspiracy claim is improperly predicated on a breach of contract claim. But I have ruled above that Guanci's fiduciary duty claim survives. Guanci has alleged that the breaches of fiduciary duty were carried out by defendants in concert. He has thus sufficiently alleged a claim for civil conspiracy.

### F. Declaratory relief

Defendants finally argue that Guanci cannot seek a declaration about his ownership shares in the Partnership because there is no "actual controversy" about the Partnership agreement. Defendants again assert that the subordination agreement has made the Partnership worthless. But the facts surrounding the subordination agreement, and its impact on the value of Guanci's shares, are not alleged in the complaint. So I do not consider those facts. And even if I did, the fact that Wells Fargo is first-in-line does not mean, as a matter of law, that Guanci has no cognizable interest in the Partnership, or that the Partnership has no value.

---

[33] As explained above, Guanci has alleged that defendants not only breached the Partnership agreement, but also that they committed additional tortious acts outside of the agreement. (Dkt. #19 at 12-18.)

[34] *Empire Financial Services, Inc. v. Bank of New York (Delaware),* 900 A.2d 92, 97 (Del. 2006).

[35] *Allied Capital Corp. v. GC-Sun Holdings, L.P.,* 910 A.2d 1020, 1036 (Del. Ch. 2006).

## IV. CONCLUSION

IT IS THEREFORE ORDERED that defendants' motion to dismiss (Dkt. #23) is DENIED.

DATED this 17th day of July, 2015.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE